**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01010-NRN
(To be supplied by the court)

Abraham Roger Thalos, Plaintiff

v.

**Jury Trial requested:**
**(please check one)**
X **Yes** ___ **No**

University of Denver,

University of Denver Sturm College of Law,

_______________________________,

_______________________________, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

---

## SECOND AMENDED COMPLAINT

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Abraham Roger Thalos, 6424 Central City Blvd., Apt. 832, Galveston, TX 77551
(Name and complete mailing address)

(409) 502-7551; abrahamrogerthalos@outlook.com
(Telephone number and e-mail address)

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: University of Denver, 2199 S. University Blvd., Denver, CO 80208
(Name and complete mailing address)

(303) 871-2000
(Telephone number and e-mail address if known)

Defendant 2: University of Denver Sturm College of Law; see attached
(Name and complete mailing address)

(303) 871-6000
(Telephone number and e-mail address if known)

Defendant 3: ______________________
(Name and complete mailing address)

______________________
(Telephone number and e-mail address if known)

Defendant 4: ______________________
(Name and complete mailing address)

______________________
(Telephone number and e-mail address if known)

**B. DEFENDANT(S) INFORMATION - CONTINUATION**

Defendant 2: University of Denver Sturm College of Law

Ricketson Law Building, 2255 E. Evans Ave., Denver, CO 80208

Telephone: (303) 871-6000

**C. JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

__X__ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

28 U.S.C. §§ 1331 and 1343;

42 U.S.C. § 1981

____ Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of ______________________________.

If Defendant 1 is an individual, Defendant 1 is a citizen of __________________________.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _________________________ (name of state or foreign nation).

Defendant 1 has its principal place of business in _______________________ (name of state or foreign nation).

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.*)

**D. STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Retaliation affecting contract rights under 42 U.S.C. § 1981

Supporting facts:

See attached D. STATEMENT OF CLAIM(S) - CONTINUATION,

numbered paragraphs 1 through 48.

**D. STATEMENT OF CLAIM(S) - CONTINUATION**

**PRELIMINARY STATEMENT**

1. Plaintiff brings one claim under 42 U.S.C. § 1981 for retaliation affecting contractual rights. Plaintiff does not assert a claim under Title VI in this pleading.

2. The claim concerns Defendants' October 2023 refusal to consider Plaintiff's return through the medical-reentry process, and their requirement that he apply through ordinary admissions, after he complained directly to the Law School official handling his return inquiry about alleged race-based scholarship terms. Plaintiff challenges that 2023 response, not the original March 2022 change in his student status.

**PARTIES, JURISDICTION, AND CONTRACTUAL RELATIONSHIP**

3. Plaintiff Abraham Roger Thalos resides in Galveston, Texas. He is of Egyptian ancestry and ethnic characteristics.

4. Defendant University of Denver ("DU") is a private university in Colorado.

5. Defendant University of Denver Sturm College of Law ("Sturm" or "the Law School") is the DU academic unit through which the acts alleged below occurred. To the extent Sturm lacks separate legal capacity, the allegations against Sturm are allegations against DU acting through the Law School.

6. Michael J. Bunker, DU's Director of Campus Safety, and Jessica Boynton, the Law School's Assistant Dean of Student Affairs, acted for DU in the communications described below. Boynton gave the October 2023 response challenged here.

7. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the claim arises under 42 U.S.C. § 1981. Venue is proper in this District because Defendants are located here and the challenged conduct occurred here.

8. In 2021, DU admitted Plaintiff to its J.D. program and awarded him a scholarship. Plaintiff accepted the offer, enrolled, and undertook tuition and financial-aid obligations.

9. DU's registrar later certified that Plaintiff was enrolled from August through December 2021 and took a leave for that term, leaving no grades from which to determine academic standing.

10. Plaintiff's contractual and prospective contractual interests included his admission, enrollment, scholarship arrangement, and the policies and processes governing medical leave, medical reentry, and renewed enrollment. At minimum, DU invited Plaintiff to pursue a renewed enrollment relationship through its medical-reentry process.

11. Plaintiff no longer has access to the institutional email account in which his original admission and scholarship records were stored. The allegations concerning those records are based on his personal knowledge and contemporaneous communications. DU retains or controls its own copies of the underlying records.

**PLAINTIFF'S RACE-BASED SCHOLARSHIP COMPLAINT**

12. DU treated Plaintiff as a racial-minority student and, at times, classified or treated him as Black. Among other things, DU invited him to participate in the Black Law Students Association and to take a leadership role.

13. Based on the scholarship terms Plaintiff reviewed, statements made to him by DU personnel, DU scholarship materials, and information from a white classmate about that

classmate's own scholarship, Plaintiff understood that his scholarship - which DU represented as associated with students of color - required a 2.3 GPA for renewal, while the white classmate's scholarship required a 3.0 GPA.

14. Plaintiff believed in good faith that assigning different scholarship terms by race denied equal contractual treatment and stigmatized him as less academically capable. He opposed that practice.

15. On July 29, 2023, Plaintiff emailed Bunker and asked why his scholarship required a 2.3 GPA while scholarships for white students required a 3.0 GPA. He stated that DU administration had explained that his scholarship was for people of color, and he expressly objected to what he viewed as a racist distinction.

**MEDICAL LEAVE AND THE REENTRY PROCESS**

16. In early 2022, Plaintiff pursued DU's medical-withdrawal process, and DU subsequently treated him as on medical leave. On January 17, 2022, a DU administrator supported his decision to withdraw for the Spring semester and urged him to complete the official process. His objection to the alleged race-based scholarship policy was an underlying reason for leaving; medical withdrawal was the administrative process used to address his circumstances.

17. On March 15, 2022, DU's Bursar's Office sent Plaintiff a billing-statement notification. Plaintiff replied about a planned payment and enrollment reminders, including reminders concerning the 2022-2023 year. On March 16, the Bursar's Office told him that it did not handle withdrawal and directed him to communicate his intention not to return to the Law

School. Plaintiff's concern included avoiding charges for a term he did not intend to attend.

18. On March 20, 2022, Plaintiff forwarded the billing correspondence to Boynton. He wrote, "I have no interest in returning to the Sturm College of Law," and asked, "Can you please be sure I am not still on the roll for the Spring?" The email also stated, "Please feel free to revoke my medical leave, as I had no true medical reason to withdraw this semester." Plaintiff acknowledges each of those statements.

19. Plaintiff intended the request concerning the Spring roll to prevent enrollment and billing for that term. His explanation of his intent is that he was expressing his decision not to attend during that period, rather than intending to foreclose every later request to resume his legal education. He acknowledges that the email also contained broader statements of dissatisfaction and the express request concerning revocation of medical leave; he does not allege that its wording was limited throughout to the Spring term.

20. The March 20 email linked Plaintiff's loss of faith in American legal education to another institution's admissions decision and also expressed dissatisfaction with legal practice. Plaintiff recalls that his broader loss of faith during that period also concerned Supreme Court developments and the treatment of race in higher education. That is his explanation of his views and intent; the March 20 email did not expressly identify a Supreme Court affirmative-action case. He did not intend those views to express an irrevocable abandonment of legal education.

21. Plaintiff later supported the Supreme Court's June 29, 2023 decision in Students for Fair Admissions, Inc. v. President and Fellows of Harvard College, 600 U.S. 181 (2023),

rejecting the challenged race-conscious admissions programs at Harvard and the University of North Carolina. That decision came more than a year after the March 2022 email. By 2023, Plaintiff was seeking to resume his legal education through the process described below.

22. On March 21, 2022, Boynton replied that Plaintiff was not registered for future courses, that his status was then a leave of absence, and that she had asked the Registrar to update his status to "withdrawn/not returning." Plaintiff acknowledges this contemporaneous notice. His claim concerns DU's later response to his 2023 return request after the intervening communications described below.

23. On August 4, 2022, approximately five months after the March 20 email, Bunker told Plaintiff in writing that the trespass order was separate from admissions or re-enrollment decisions and "does not prohibit you from submitting a request to return from a medical leave."

24. Bunker directed Plaintiff to DU's Medical Leave and Medical Re-Entry policies. He explained that the Law School could have additional return requirements, but that those requirements would be addressed after the medical-leave committee reviewed and reached a determination on the reentry request.

25. Plaintiff understood Bunker's August 4 communication as permission to submit a medical-reentry request for consideration, subject to committee review, registration holds, Law School requirements, and the trespass order. Bunker did not promise readmission or state that he had reviewed the March 2022 correspondence or determined Plaintiff's eligibility.

26. Plaintiff pursued that process. On September 6, 2023, he reported submitting his personal medical-reentry form, confirmation number 00039428, and his provider's office separately confirmed submitting the provider form, confirmation number 00039427. These were submission confirmations, not approval of reentry.

27. By September 21, 2023, Plaintiff had received a communication from DU's Student Outreach & Support office stating that the Law School might have established processes under which it would consider his return and instructing him to contact the Law School about its unit-specific requirements.

28. On September 21, 2023, Bunker expressly authorized Plaintiff to contact Boynton directly, stated that she had been told Plaintiff could speak with her, and provided her email address.

**PROTECTED COMPLAINT TO BOYNTON**

29. On September 21, 2023, Plaintiff emailed Boynton under the subject line "Abe Thalos Re-Entry from Medical Leave," copying Bunker.

30. In that email, Plaintiff opposed the alleged race-based scholarship terms. He stated his understanding that white scholarship recipients had a 3.0 renewal requirement while his requirement was 2.3, asked DU to change his requirement to 3.0, and referred to pursuing a civil-rights action if DU refused to revise the scholarship terms.

31. Plaintiff's July 29 and September 21 communications were good-faith opposition to what he reasonably believed was race discrimination in the terms and enjoyment of a scholarship agreement and educational relationship protected by § 1981.

32. Boynton received the September 21 complaint while acting as the Law School official to whom DU had directed Plaintiff for the return process. Defendants therefore had actual knowledge of Plaintiff's protected complaint before the challenged decision.

**ADVERSE ACTION AND CAUSATION**

33. Although Boynton had notified Plaintiff of the requested status change in March 2022, the later August 2022 instructions and September 2023 communications led him to understand that he could request consideration of a return. He does not allege that those communications themselves restored his enrollment or constituted a final eligibility determination.

34. After Plaintiff followed up, Boynton responded on October 27, 2023 - approximately five weeks after receiving the race complaint.

35. Boynton referred to Plaintiff's March 20, 2022 email and stated that, based on his expressed intention, she had followed the Law School's established process by asking the Registrar to mark him "withdrawn/not returning." She stated that she had informed him of that action on March 21, 2022, and attached the earlier email. She then told him that he must reapply through the regular admissions process and that Law School admissions was separate from the University's medical-reentry process.

36. Plaintiff alleges that Boynton's October 27 response refused his request to return through the medical-reentry process and imposed the materially different requirement of applying through ordinary admissions. The challenged action is that response to the 2023 request, not an allegation that Boynton first changed his recorded status in October 2023.

37. The March 2022 correspondence and requested status change predated Bunker's August 2022 instructions, the September 2023 submissions, and the referral to Boynton. Plaintiff relies on that sequence in alleging inconsistent handling of his later request; he does not allege that the correspondence was new information in October 2023.

38. Plaintiff infers a retaliatory motive from the timing of Boynton's response after his September 21 race complaint and from what he understood to be inconsistent handling of his request following the intervening instructions and referral. He alleges that the March 2022 status explanation was used to deny consideration of the 2023 request because of his protected complaint. He acknowledges that Boynton had notified him of the requested status change in March 2022, before the protected communications alleged here.

39. Plaintiff alleges that, but for his complaint opposing race-based scholarship terms, Defendants would not have refused consideration of his 2023 medical-reentry request when and in the manner alleged, but would have allowed that request to be assessed subject to the applicable requirements.

40. Defendants' action impaired Plaintiff's ability to perform, enforce, modify, and enjoy the benefits and conditions of his educational and scholarship relationship. Alternatively, it impaired his right to make a renewed enrollment contract on equal terms and free from retaliation.

41. Plaintiff alleges that the October 2023 action deprived him of an opportunity for consideration through the medical-reentry process and caused resulting economic loss, loss of educational opportunity, expenses, and emotional distress. He seeks recovery for

harm caused by the alleged retaliation, rather than attributing all losses from his earlier withdrawal to the October 2023 response.

**COUNT ONE**

**Retaliation Affecting Contract Rights in Violation of 42 U.S.C. § 1981**

42. Plaintiff incorporates paragraphs 1 through 41 as though fully set forth here.

43. Section 1981 protects the making and enforcement of contracts, including the performance, modification, termination, and enjoyment of the benefits, privileges, terms, and conditions of a contractual relationship. It also prohibits retaliation for opposing race discrimination affecting those rights.

44. Plaintiff engaged in protected activity when he opposed what he reasonably and in good faith believed were race-based scholarship terms in his July 29 and September 21, 2023 communications.

45. Defendants knew of the protected activity before the October 27, 2023 decision.

46. Defendants took materially adverse action by refusing Plaintiff's 2023 request to return through the medical-reentry process and requiring him to apply through ordinary admissions.

47. Plaintiff's protected activity was a but-for cause of the adverse action.

48. As a direct and proximate result, Plaintiff suffered the injuries and damages described above and is entitled to relief allowed by law.

**E. REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

Plaintiff requests judgment, compensatory and nominal damages, punitive damages to the extent permitted, taxable costs and interest, and all other just relief. Plaintiff does not seek readmission in this pleading.

**F. PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ Abraham Roger Thalos
(Plaintiff's signature)

September 14, 2026
(Date)